# COMPOSITE EXHIBIT A



# MIAMI-DADE COUNTY CLERK OF THE COURTS
## HARVEY RUVIN

Contact Us    My Account    

---

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

| | |
|---|---|
| **NADINE TEACHMAN ET AL VS DOCTORS HOSPITAL, INC. ET AL** | |

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2022-022480-CA-01 | **Filing Date:** | 11/23/2022 |
| **State Case Number:** | 132022CA022480000001 | **Judicial Section:** | CA15 |
| **Consolidated Case No.:** | N/A | **Case Type:** | Discrimination - Employment or Other |
| **Case Status:** | OPEN | | |

| ☰ Related Cases | Total Of Related Cases: 0 ✚ |
|---|---|

| 👥 Parties | Total Of Parties: 12 ✚ |
|---|---|

| 🔧 Hearing Details | Total Of Hearings: 0 ✚ |
|---|---|

| 🔊 Dockets | Total Of Dockets: 3 ➖ |
|---|---|

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 4 | 11/29/2022 | | Receipt: | Event | **RECEIPT#:3130086 AMT PAID:$411.00 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 3102-MULTIPLE DEFENDANT 1 $10.00 $10.00 TENDER TYPE:EFILINGS TENDER AMT:$411.00 RECEIPT DATE:11/29/2022 REGISTER#:313 CASHIER:EFILINGUSER** |
| 📄 | 2 | 11/23/2022 | | Complaint | Event | |
| 📄 | 1 | 11/23/2022 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



## HARVEY RUVIN

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2022 Clerk of the Courts. All rights reserved.



**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>NADINE TEACHMAN, ARIADNA PEREZ, KESNA ALEXANDER</u>
Plaintiff                                                  Case # _____
                                                              Judge   _____

vs.

<u>DOCTORS HOSPITAL, INC., BAPTIST HEALTH SOUTH FLORIDA, INC., YANIELYS RODIGUEZ, LOURDES MARTIN, YOLANDA ROQUE, NAYIVIS PUPO, EDWARD GARABEDIAN, NICHOLE DISTEFANO, MARIA CABRERA</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE        (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☒ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
     ☐ Residential Evictions
     ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   <u>11</u>

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
     ☐ yes
     ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
     ☒ no
     ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
     ☒ yes
     ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
     ☐ yes
     ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Drew Maris Newman</u>       Fla. Bar # <u>1031438</u>
      Attorney or party           (Bar # if attorney)

<u>Drew Maris Newman</u>        <u>11/23/2022</u>
 (type or print name)       Date

Case 1:22-cv-24260-KMW   Document 1-2   Entered on FLSD Docket 12/30/2022   Page 7 of 36

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

NADINE TEACHMAN, an individual,
ARIADNA PEREZ, an individual, and
KESNA ALEXANDER, an individual

GENERAL JURISDICTION DIVISION

       Plaintiffs,

CASE NO.:

vs.

DOCTORS HOSPITAL, INC., a Florida
Not for Profit Corporation, BAPTIST
HEALTH SOUTH FLORIDA, INC.,
a Florida Not for Profit Corporation,
YANIELYS RODRIGUEZ, as Surgical
Technician; LOURDES MARTIN, as
Surgical Technician; YOLANDA ROQUE,
as Surgical Technician; NAYIVIS PUPO,
as Registered Nurse and Team Lead;
EDWARD GARABEDIAN, as Vice President;
NICHOLE DISTEFANO, as Patient
Care Supervisor; and MARIA
CABRERA, as Patient Care Manager;

       Defendants.

_____/

## **COMPLAINT**

       Plaintiffs, NADINE TEACHMAN, ARIADNA PEREZ, and KESNA ALEXANDER, by

and through their undersigned counsel, sue Defendants, DOCTORS HOSPITAL, INC., a Florida

Not for Profit Corporation, BAPTIST HEALTH SOUTH FLORIDA, INC., a Florida Not for

Profit Corporation, YANIELYS RODRIGUEZ, as a Surgical Technician, LOURDES MARTIN,

as Surgical Technician, YOLANDA ROQUE, as Surgical Technician, NAYIVIS PUPO, as

Registered Nurse and Team Lead; EDWARD GARABEDIAN, as Vice President, NICHOLE

DISTEFANO, as Patient Care Supervisor, and MARIA CABRERA, as Patient Care Manager,

and in support thereof, allege:

## JURISDICTION, PARTIES AND VENUE

1. That this is an action for damages in excess of Thirty Thousand Dollars ($30,000.00) and comes within the jurisdiction of this Court.

2. That at all times material hereto, Plaintiff, NADINE TEACHMAN, resided in Miami-Dade County, Florida.

3. That at all times material hereto, Plaintiff, ARIADNA PEREZ, resided in Miami-Dade County, Florida.

4. That at all times material hereto, Plaintiff, KESNA ALEXANDER, resided in Miami-Dade County, Florida.

5. That at all times material hereto, Defendant, DOCTORS HOSPITAL, INC., was a Florida Not for Profit Corporation, authorized to do and doing business in the State of Florida.

6. That at all times material hereto, Defendant, BAPTIST HEALTH SOUTH FLORIDA, INC., was a Florida Not for Profit Corporation, authorized to do and doing business in the State of Florida.

7. That at all times material hereto, Defendant, YANIELYS RODRIGUEZ, is a surgical technician for Doctors Hospital, Inc., she lives in Miami Dade County, Florida and although she is an employee, she is an active participant as set forth in the allegations below and is *sui juris*.

8. That at all times material hereto, Defendant, LOURDES MARTIN, is a surgical technician for Doctors Hospital, Inc., she lives in Miami Dade County, Florida and although she is an employee, she is an active participant as set forth in the allegations below and is *sui juris*.

9. That at all times material hereto, Defendant, YOLANDA ROQUE, is a surgical technician for Doctors Hospital, Inc., she lives in Miami Dade County, Florida and although she is an employee, she is an active participant as set forth in the allegations below and is *sui juris*.

10. That at all times material hereto, Defendant, NAYIVIS PUPO, is a Nurse and Team Lead for Doctors Hospital, Inc., lives in Miami Dade County, Florida and although an employee, they are an active participant as set forth in the allegations below and is *sui juris*.

11. The following Defendants are individuals who served in management/supervisory roles with Doctors Hospital Inc., and/or Baptist Health South Florida, Inc. for one or more years during the period from 2016 through present covering this lawsuit:

12. EDWARD GARABEDIAN serves as Vice President; NICHOLE DISTEFANO serves as Patient Care Supervisor, MARIA CABRERA serves as Patient Care Manager. All of the above people reside in Miami-Dade County, Florida, and are all otherwise *sui juris*.

13. At all times material hereto, Defendant employed more than 15 employees on a full-time basis.

14. Defendant is an "employer" within the meaning of Section 760.02(7) of the Florida Statutes.

15. Venue is appropriate in Miami-Dade County, Florida, as all of the events which form the basis of this action occurred in Miami-Dade County.

**COMPLIANCE WITH PROCEDURAL REQUIREMENTS**

16. On or about October 28, 2020, Plaintiff Kesna Alexander filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC").

17. On or about November 3, 2020, Plaintiffs Ariadna Perez and Nadine Teachman filed charges of discrimination with the Equal Employment Opportunities Commission ("EEOC")

18. After conciliation with Defendants failed, on or about August 25, 2022, Plaintiff Kesna Alexander received a right to sue notice which stated that the EEOC found reasonable

cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge.

19. After conciliation with Defendants failed, on or about August 29, 2022, Plaintiffs Nadine Teachman and Ariadna Perez received a right to sue notice which stated that the EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge.

20. All other conditions precedent to this action have occurred or been satisfied or waived.

## **FACTS**

21. Plaintiff NADINE TEACHMAN started working for Defendants in 2012.

22. Plaintiff NADINE TEACHMAN's most recent position with Defendants was that of a Tier 3 Surgical Technician.

23. Plaintiff ARIADNA PEREZ started working for Defendants on approximately July 27, 2015.

24. Plaintiff ARIADNA PEREZ's most recent position with Defendants was that of a Registered Nurse and had previously received the award for Nurse of the year in 2016 and 2017.

25. Plaintiff KESNA ALEXANDER started working for Defendants on approximately January 28, 2019.

26. Plaintiff KESNA ALEXANDER's most recent position with Defendants was that of a Tier 3 Surgical Technician.

27. At all times material hereto, NICHOLE DISTEFANO was acting on behalf of the Defendants and was further acting in the course and scope of her employment with the Defendants.

28. At all times material hereto, EDWARD "ED" GARABEDIAN was acting on behalf of the Defendants and was further acting in the course and scope of his employment with the Defendants.

29. At all times material hereto, MARIA CABRERA was acting on behalf of the Defendants and was further acting in the course and scope of her employment with the Defendants.

30. At all times material hereto, YANIELYS RODRIGUEZ was acting on behalf of the Defendants and was further acting in the course and scope of her employment with the Defendants.

31. At all times material hereto, LOURDES MARTIN was acting on behalf of the Defendants and was further acting in the course and scope of her employment with the Defendants.

32. At all times material hereto, YOLANDA ROQUE was acting on behalf of the Defendants and was further acting in the course and scope of her employment with the Defendants.

33. At all times material hereto, NAYIVIS PUPO was acting on behalf of the Defendants and was further acting in the course and scope of her employment with the Defendants.

34. Since starting to work with Defendants, Plaintiff Nadine Teachman has been written up for corrective actions and/or deemed a scapegoat on multiple occasions without valid merit for the negative marks in her file.

35. Prior to Plaintiffs raising any complaints about the hostility of their work environment or the disparate treatment that they were forced to succumb to, Ariadna Perez had been voted Nurse of the Year by her peers in 2016 and 2017.

36. Beginning in approximately 2019, Plaintiff Ariadna Perez became friendly with Co-Plaintiffs Nadine Teachman and Kesna Alexander and started to notice bullying, disparate and racist treatment by other employees at work towards black non-Hispanic co-workers, including but not limited to, Nadine Teachman and Kesna Alexander.

37. Prior to becoming friendly with Nadine Teachman and Kesna Alexander, Ariadna Perez noticed snide, rude and racist comments were being made in Spanish regarding non-hispanics in the workplace but did not truly see the extent of the comments or the impact of the comments until she befriended Nadine and Kesna.

38. The disparate treatment included rude comments about black non-hispanics, often in Spanish in front of them, more difficult assignments, more work, and exclusion from "team" activities such as birthday celebrations. On work breaks the black non-hispanics often had to eat at their own table, separated from the Hispanic clique made up of Yanielys, Lourdes, Yolanda, "Ani" and "Pupo".

39. Differential treatment towards employees for their birthdays was something that Ms. Alexander noted on multiple occasions, while even witnessing Maria Cabrera give "Ani" money for specific people's birthdays shortly after Maria stated to Ms. Alexander that management is not supposed to partake in certain festivities.

40. Being 2 of approximately 5 black workers in a department with over 50 people, made Plaintiffs Alexander and Teachman very weary of the fact that it felt like all black employees were given a write up for even the smallest reasons, whereas the other employees were given much more leniency.

41. As a member of the LGBTQ community, Teachman often noticed that managerial staff was practicing favoritism with certain employees and would witness these "favored"

employees and managers engaging in unprofessional conversations about the LGBTQ community.

42. The fact that some employees were treated differently because they were viewed as "favored" also would allow for Plaintiffs to be held to a different standard than others, such as the allowance for some members to have a 45 minute to 1 hour lunch break while patients are waiting to be relieved while others are only able to have a 30 minute lunch break.

43. These actions by Defendants Nichole Distefano and Maria Cabrera only made the work environment more hostile for Plaintiffs because management was aware of the disparate treatment that Perez, Alexander, and Teachman were experiencing and did not provide them with any protection, which only resulted in the conduct getting progressively worse.

44. Instead of addressing the situation in a professional way, the Plaintiffs were essentially outed to the rest of their co-workers that they had raised complaints about the lack of inclusion, so were ultimately invited to participate after statements were made to indicate that they were only being included because of the complaints that they made.

45. On April 3rd, 2019, after befriending Co-Plaintiff's Teachman and Alexander, Ariadna's car was keyed while on shift. While she did reach out to the Director of Security, Alex Garabedian, he told her that unfortunately there were no cameras where the car was parked. Her car happened to be parked next to one of the most outspoken perpetrators of the disparate treatment Yanielys Rodriguez's car.

46. On April 10, 2019, Ariadna Perez was aggressively bumped intentionally by Yanielys Rodriguez while getting daily assignment schedules. This confrontation was reported to the leadership team via email by Ariadna, yet nothing occurred as a result.

47. The disparate treatment continued, for example, on June 3, 2019, YANIELYS

RODRIGUEZ referred to a black nurse as "La Negra de mierda esa", which is Spanish for that piece of "crap" (synonym substituted for decency) black girl. This is just one example of the types of comments that Yanielys would make towards non-hispanic employees.

48. On other occasions, employees would often start singing "la cucaracha" whenever Kesna or Nadine would pass by or make comments like "hay moros en las costa", which is Spanish for there are black beans in sight.

49. As a result of the work environment, Plaintiff Ariadna Perez filed a written complaint at work to try to address the behavior on or about June 5, 2019.

50. After filing this complaint, Plaintiff Ariadna Perez noticed that she herself was starting to have problems with her Hispanic co-workers and began to be treated differently with regard to her workload becoming heavier and harder as well as the lack of assistance from co-workers when needed.

51. Plaintiff, Kesna Alexander would hear and see management speak in Spanish in the patient care area even after leadership made announcements that hospital policy states only English should be spoken while working.

52. On October 4, 2019, Plaintiffs Nadine Teachman and Kesna Alexander met with Val Campos, Director of Surgical Services, and Jennifer Arroliga, Patient Care Supervisor to follow up on concerns including, but not limited to claims of discrimination, bullying, harassment or retaliation.

53. After this meeting, both Nadine Teachman and Kesna Alexander experienced retaliation in the form of meritless complaints made against them in addition to feeling that they were being targeted and held to a different standard than other co-workers.

54. On or about October 8, 2019, Ariadna Perez voiced her concerns to her supervisor,

Nichole Distefano in confidence with the hopes of resolving the issues she was witnessing and personally experiencing, including, but not limited to, feeling retaliated against, defective equipment, inequality of work assignments and use of inappropriate language.

55. Shortly thereafter, Nichole Distefano spoke to each individual that Ariadna mentioned and effectively outed her to the department resulting in being excluded from social gatherings, met with hostility throughout her workday and suddenly and suspiciously she began receiving complaints against her.

56. On or about December 6, 2019, Supervisor Nichole Distefano issued a documentation of corrective action for an alleged transgression that occurred on October 30, 2019, more than 30 days prior.

57. On or about January 13, 2020, a glint survey was conducted which allowed employees to anonymous comment on work conditions and their coworkers with most of the comments in this survey looking nearly identical and referring to the three Plaintiffs as bullies who scared the other employees, when the reality was it was the Plaintiffs who filed formal complaints and voiced their concerns to management regarding the bullying, retaliation and discriminatory conduct that they were personally experiencing.

58. After unsuccessful attempts to rectify and correct the discrimination issue which resulted in Plaintiffs grievances being shared with the offenders, on or about January 15, 2020, the Plaintiffs met with Ed Garabedian, Vice President of Doctors Hospital, during which the Plaintiffs raised their concerns of bullying, hostility, disrespect, inequality of work assignments and an unprofessional work environment amongst other things.

59. It was not until after the Plaintiffs had gone to the Vice President, Ed Garabedian, that an avalanche of complaints started to come in.

60. In January of 2020, Plaintiff Ariadna Perez applied for transfer to be promoted as Assistant Nurse Manager at Baptist Main and had passed her 1st interview on January 21, 2020 with a 2nd panel interview on January 27, 2020, but after Nichole Distefano and Maria Cabrera were made aware of the transfer request, Ariadna received a first and final warning which resulted in her application being pulled and effectively impeding her from working elsewhere within the organization.

61. On January 16, 2020, an anonymous complaint was made via the compliance hotline against Nadine Teachman for discrimination and bullying, which also stated Kesna Alexander's and Ariadna Perez's name and included statements such as "us staff thiunk Nadine Kesna and Aradna doing something bad" and "we need help to stop these people" suggesting that Maria Cabrera and Nichole Distefano needed to be protected.

62. On February 5, 2020, another anonymous complaint came in, but this time against all three plaintiffs, which claimed a hostile work environment and referenced the glint survey response.

63. Based on the timing and the content of the complaints, Plaintiffs believe that after raising their complaints with management, management put in to action a plan to force all three Plaintiffs out of their jobs at Doctors Hospital.

64. It appears based on the content and writing style that many of the complaints that were filed against Ariadna Perez were filed by employees Nichole Distefano and Maria Cabrera.

65. In an absurd example of disparate treatment, on February 11, 2020, Nadine Teachman was written up for a violation of the call-out policy when she was forced to call out at 6:05 AM for a shift starting at 7:00 AM because her son had overdosed in an attempt to kill himself.

Management deemed this a violation because policy requires staff to call out a minimum of 2 hours in advance.

66. On or about February 14, 2020, Kesna Alexander received a first and final warning for employee conduct, harassment and discrimination, as well as alleged workplace violence.

67. Prior to this, Kesna Alexander had never had any disciplinary actions against her related to her performance, attitude or otherwise, but was in fact praised by her supervisor, Jennifer, for stellar work performance, great attitude, being pleasant to work with, and was even given a raise.

68. In a matter of approximately 15 days, 12 complaints or negative comments were raised against Kesna Alexander after working for over a year without a single complaint.

69. On or about February 14, 2020, Nadine Teachman received a letter which stated that effective immediately, her employment was terminated and was told that she did not have the right to grieve the termination of her employment.

70. On or about February 17, 2020, Kesna Alexander was forced to resign as a result of the inaccurate allegations brought against her and was not allowed to file a grievance for her first and final reprimand prior to counseling or disciplinary actions.

71. On or about February 17, 2020, Nadine Teachman sent a letter to Doctors Hospital to let them know of her intent to resign from her position effective immediately due to the treatment she had received after attempting to follow the proper chain of command for reporting abuse and response from leadership and other co-workers in response to her attempts to address the inappropriate conduct she was witnesses and enduring.

72. The decision by Nadine Teachman to resign was one that she felt forced to make due to the hostile work environment, as well as the physical and mental debilitation that she

experienced while working under these circumstances.

73. On or about February 18, 2020, Ariadna Perez received a first and final warning for employee conduct, harassment and discrimination, and workplace violence, which she refused to sign due to the lack of veracity and ultimately she was forced to resign.

74. Plaintiffs have been injured both financially and emotionally by the actions of Defendants. They seek full and complete compensatory and punitive damages, including attorney's fees and costs, for the injuries that they have suffered.

75. Plaintiffs have retained the undersigned firm to represent them in this action and are obligated to pay reasonable attorneys' fees and costs for services rendered. Defendant should be made to pay said fee under § 760.11, Florida Statutes, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq.

### COUNT I - RACE DISCRIMINATION
### (AGAINST DOCTORS HOSPITAL, INC.)

76. Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

77. This is an action against Defendant Doctors Hospital, Inc. for discrimination based upon race brought under Chapter 760, Florida Statues, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq...

78. Plaintiffs' KESNA ALEXANDER and NADINE TEACHMAN have been the victim of discrimination on the basis of their race in that they were treated differently than similarly situated non-hispanic employees of Defendant and have been subject to hostility and poor treatment on the basis, at least in part, of their races.

79. Defendant is liable for the differential treatment and hostility towards Plaintiffs because it controlled the actions and inactions of the persons making decisions affecting

Plaintiffs or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiffs.

80.     Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiffs as more fully set forth above because it allowed the differential treatment and participated in same.

81.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

82.     In essence, the actions of agents of Defendant, Doctors Hospital, Inc., which were each condoned and ratified by Defendants, were of a race-based nature and in violation of the laws set forth herein.

83.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiffs' continued employment with Defendant.

84.     The events set forth herein led, at least in part, to Plaintiffs' termination and/or forced resignations.

85.     Defendants' conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq..

86.     As a direct and proximate result of Defendants' conduct described above, Plaintiffs have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiffs are entitled to

injunctive/equitable relief, punitive damages, and Attorney's Fees.

<u>COUNT II - RACE DISCRIMINATION</u>
**(AGAINST EDWARD GARABEDIAN as VICE PRESIDENT)**

87.     Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

88.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statues, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq...

89.     Plaintiffs' KESNA ALEXANDER and NADINE TEACHMAN have been the victim of discrimination on the basis of their race in that they were treated differently than similarly situated non-hispanic employees of Defendant and have been subject to hostility and poor treatment on the basis, at least in part, of their races.

90.     Defendant is liable for the differential treatment and hostility towards Plaintiffs because he controlled the actions and inactions of the persons making decisions affecting Plaintiffs or he knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiffs.

91.     Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiffs as more fully set forth above because he allowed the differential treatment and participated in same.

92.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

93.     In essence, the actions of agents of Defendant, Edward Garabedian, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

94.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiffs' continued employment with Defendant.

95.     The events set forth herein led, at least in part, to Plaintiffs' termination and/or forced resignations.

96.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq..

97.     As a direct and proximate result of Defendant's conduct described above, Plaintiffs have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiffs are entitled to injunctive/equitable relief, punitive damages, and Attorney's Fees.

## COUNT III - RACE DISCRIMINATION
### (AGAINST NICHOLE DISTEFANO as PATIENT CARE SUPERVISOR)

98.     Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

99.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statues, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq...

100.    Plaintiffs' KESNA ALEXANDER and NADINE TEACHMAN have been the victim of discrimination on the basis of their race in that they were treated differently than similarly situated non-hispanic employees of Defendant and have been subject to hostility and poor treatment on the basis, at least in part, of their races.

101.    Defendant is liable for the differential treatment and hostility towards Plaintiffs because she controlled the actions and inactions of the persons making decisions affecting Plaintiffs or she knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiffs.

102.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiffs as more fully set forth above because it allowed the differential treatment and participated in same.

103.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

104.    In essence, the actions of agents of Defendant, Nichole Distefano, which were each condoned and ratified by Defendants, were of a race-based nature and in violation of the laws set forth herein.

105.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiffs' continued employment with Defendant.

106.    The events set forth herein led, at least in part, to Plaintiffs' termination and/or forced resignations.

107.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq..

108.    As a direct and proximate result of Defendant's conduct described above, Plaintiffs have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses,

along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiffs are entitled to injunctive/equitable relief, punitive damages, and Attorney's Fees.

**COUNT IV - RACE DISCRIMINATION**
**(AGAINST MARIA CABRERA as PATIENT CARE SUPERVISOR )**

109.   Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

110.   This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statues, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq...

111.   Plaintiffs' KESNA ALEXANDER and NADINE TEACHMAN have been the victim of discrimination on the basis of their race in that they were treated differently than similarly situated non-hispanic employees of Defendant and have been subject to hostility and poor treatment on the basis, at least in part, of their races.

112.   Defendant is liable for the differential treatment and hostility towards Plaintiffs because she controlled the actions and inactions of the persons making decisions affecting Plaintiffs or she knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiffs.

113.   Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiffs as more fully set forth above because she allowed the differential treatment and participated in same.

114.   Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

115.     In essence, the actions of agents of Defendant, Maria Cabrera, which were each condoned and ratified by Defendants, were of a race-based nature and in violation of the laws set forth herein.

116.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiffs' continued employment with Defendant.

117.     The events set forth herein led, at least in part, to Plaintiffs' termination and/or forced resignations.

118.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq..

119.     As a direct and proximate result of Defendants' conduct described above, Plaintiffs have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiffs are entitled to injunctive/equitable relief, punitive damages, and Attorney's Fees.

## COUNT V - RACE DISCRIMINATION
### (AGAINST BAPTIST HEALTH SOUTH FLORIDA, INC.)

120.     Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

121.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statues, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq...

122.     Plaintiffs' have been the victim of discrimination on the basis of their race in that

they were treated differently than similarly situated non-hispanic employees of Defendant and have been subject to hostility and poor treatment on the basis, at least in part, of their races.

123.   Defendant is liable for the differential treatment and hostility towards Plaintiffs because it controlled the actions and inactions of the persons making decisions affecting Plaintiffs or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiffs.

124.   Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiffs as more fully set forth above because it allowed the differential treatment and participated in same.

125.   Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

126.   In essence, the actions of agents of Defendant, Baptist Health South Florida, Inc., which were each condoned and ratified by Defendant, was of a race-based nature and in violation of the laws set forth herein.

127.   The discrimination complained of herein affected a term, condition, or privilege of Plaintiffs' continued employment with Defendant.

128.   The events set forth herein led, at least in part, to Plaintiffs' termination and/or forced resignations.

129.   Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq..

130.    As a direct and proximate result of Defendant's conduct described above, Plaintiffs have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiffs are entitled to injunctive/equitable relief, punitive damages, and Attorney's Fees.

### COUNT VI – SEXUAL ORIENTATION DISCRIMINATION
### (AGAINST DOCTORS HOSPITAL, INC.)

131.    Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

132.    This is an action against Defendant for discrimination based upon sexual orientation brought under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq...

133.    Plaintiff NADINE TEACHMAN has been the victim of discrimination on the basis of her sexual orientation in that she was treated differently than similarly situated heterosexual employees of Defendant and have been subject to hostility and poor treatment on the basis, at least in part, of her sexual orientation.

134.    Defendant is liable for the differential treatment and hostility towards Plaintiffs because it controlled the actions and inactions of the persons making decisions affecting Plaintiffs or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiffs.

135.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiffs as more fully set forth above because it allowed the differential treatment and participated in same.

136.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

137.    In essence, the actions of agents of Defendant, Doctors Hospital, Inc., which were each condoned and ratified by Defendants, were of a sexual orientation based nature and in violation of the laws set forth herein.

138.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

139.    The events set forth herein led, at least in part, to Plaintiff's termination and/or forced resignations.

140.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon sexual orientation in violation of, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq..

141.    As a direct and proximate result of Defendant's conduct described above, Plaintiffs have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiffs are entitled to injunctive/equitable relief, punitive damages, and Attorney's Fees.


**COUNT VII – SEXUAL ORIENTATION DISCRIMINATION**
**(AGAINST BAPTIST HEALTH SOUTH FLORIDA, INC.)**

142.    Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

143.    This is an action against Defendant for discrimination based upon sexual orientation brought under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq...

144.    Plaintiff NADINE TEACHMAN has been the victim of discrimination on the basis of her sexual orientation in that she was treated differently than similarly situated heterosexual employees of Defendant and have been subject to hostility and poor treatment on the basis, at least in part, of her sexual orientation.

145.    Defendant is liable for the differential treatment and hostility towards Plaintiffs because it controlled the actions and inactions of the persons making decisions affecting Plaintiffs or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiffs.

146.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiffs as more fully set forth above because it allowed the differential treatment and participated in same.

147.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

148.    In essence, the actions of agents of Defendant, Baptist Health South Florida, Inc., which were each condoned and ratified by Defendants, were of a sexual orientation based nature and in violation of the laws set forth herein.

149.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

150.    The events set forth herein led, at least in part, to Plaintiff's termination and/or forced resignations.

151.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon sexual orientation in violation of, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq..

152.    As a direct and proximate result of Defendant's conduct described above, Plaintiffs have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiffs are entitled to injunctive/equitable relief, punitive damages, and Attorney's Fees.

## COUNT VIII - RETALIATORY DISCHARGE
### (AGAINST DOCTORS HOSPITAL, INC.)

153.    Plaintiffs reallege paragraphs 1 through 75 above in this county as though restated herein.

154.    Defendant is an employer as that term is used under the applicable statutes referenced above.

155.    The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiffs reported unlawful employment practices adversely affecting them under  42 U.S.C § 2000e et seq., Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981 and Chapter 760, Florida Statutes.

156.    The foregoing unlawful actions by Defendant were purposeful.

157.    Plaintiffs voiced opposition to unlawful employment practices during their employment with Defendant and was the victim of retaliation thereafter, as related in part above. The events set forth herein led, at least in part, to Plaintiffs' termination and/or forced resignations.

158.     Plaintiffs are members of a protected class because they reported unlawful employment practices and were the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

159.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiffs have suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiffs are entitled to equitable/injunctive relief, punitive damages, and Attorney's Fees.

## COUNT IX - RETALIATORY DISCHARGE
### (AGAINST BAPTIST HEALTH SOUTH FLORIDA, INC.)

160.     Plaintiffs reallege paragraphs 1 through 75 above in this county as though restated herein.

161.     Defendant is an employer as that term is used under the applicable statutes referenced above.

162.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiffs reported unlawful employment practices adversely affecting them under 42 U.S.C § 2000e et seq., Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981 and Chapter 760, Florida Statutes.

163.     The foregoing unlawful actions by Defendant were purposeful.

164.     Plaintiffs voiced opposition to unlawful employment practices during their employment with Defendant and was the victim of retaliation thereafter, as related in part above.

The events set forth herein led, at least in part, to Plaintiffs' termination and/or forced resignations.

165.    Plaintiffs are members of a protected class because they reported unlawful employment practices and were the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

166.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiffs have suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiffs are entitled to equitable/injunctive relief, punitive damages, and Attorney's Fees.

### <u>COUNT X - CIVIL CONSPIRACY</u>
**(AGAINST EDWARD GARABEDIAN as VICE PRESIDENT, NICHOLE DISTEFANO as PATIENT CARE SUPERVISOR, MARIA CABRERA as PATIENT CARE SUPERVISOR, LOURDES MARTIN as SURGICAL TECHNICIAN, YOLANDA ROQUE as SURGICAL TECHNICIAN, NAYIVIS PUPO, as REGISTERED NURSE AND TEAM LEAD and YANIELYS RODRIGUEZ as SURGICAL TECHNICIAN )**

167.    Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

168.    Defendants GARABEDIAN, DISTEFANO, CABRERA, MARTIN, ROQUE, PUPO and RODRIGUEZ during their employment as set forth above, conspired with DOCTORS HOSPITAL, INC. starting in 2019 and continuing to the present, fraudulently as set forth below, concealing their actions from the Plaintiffs.

169.    Defendants GARABEDIAN, DISTEFANO, CABRERA, MARTIN, ROQUE, PUPO and RODRIGUEZ, made an agreement, as apparent by the dates of meetings with

management compared to the dates of the complaints/comments received and the content of those complaints/comments, that resulted in Plaintiffs being reprimanded and ultimately discharged from their positions after raising formal complaints to supervisors/management about bullying, discrimination, hostile work environment, etc.

170.    Defendants GARABEDIAN, DISTEFANO, CABRERA, MARTIN, ROQUE, PUPO and RODRIGUEZ, committed an overt act in furtherance of their conspiracy, including:

a.   Improperly investigating or neglecting to properly investigate Plaintiffs formal complaints about bullying, discrimination, hostile work environment, etc.,

b.   Ignoring the repeated concerns and complaints voiced by Plaintiffs in both a formal and informal way,

c.   Informing multiple team members of the formal and informal complaints raised by Plaintiffs, including but not limited to, informing the specific team members complained about and telling them who brought forth the complaint.

d.   Unexplained and unfounded complaints raised against Plaintiffs after their concerns had been voiced to supervisors and/or management,

e.   Secretly agreeing to file numerous complaints against Plaintiffs to create a log significant enough to falsely justify termination and/or forced resignations.

171.    Defendants' conspiracy and their respective over acts caused Plaintiffs to lose their jobs and suffer damages via mental anguish, emotional distress, loss of benefits, embarrassment, humiliation, damage to reputation, lost wages, and other tangible and intangible damages.

## COUNT XI – VICARIOUS LIABILITY
### (AGAINST DOCTORS HOSPITAL, INC. and
### BAPTIST HEALTH SOUTH FLORIDA, INC.)

172.    Plaintiffs reallege and incorporate paragraphs 1 through 75 as if fully set forth herein.

173.    Plaintiffs are employees of Defendants, DOCTORS HOSPITAL, INC. and therefore employees of BAPTIST HEALTH SOUTH FLORIDA, INC., and are entitled to inform and report discriminatory behavior, a hostile work environment, bullying, etc. to their employer without fear of repercussion.

174.    Defendants GARABEDIAN, DISTEFANO, CABRERA, MARTIN, ROQUE, PUPO and RODRIGUEZ, during their employment as set forth above, conspired to ultimately cause Plaintiffs' lose their jobs starting in 2019 and continuing to the present, fraudulently as set forth below, concealing their actions from the Plaintiffs.

175.    Defendants GARABEDIAN, DISTEFANO, CABRERA, MARTIN, ROQUE, PUPO and RODRIGUEZ, made an agreement, as apparent by the dates of meetings with management compared to the dates of the complaints/comments received and the content of those complaints/comments, that resulted in Plaintiffs being reprimanded and ultimately discharged from their positions after raising formal complaints to supervisors/management about bullying, discrimination, hostile work environment, etc.

176.    Defendants GARABEDIAN, DISTEFANO, CABRERA, MARTIN, ROQUE, PUPO and RODRIGUEZ committed an overt act in furtherance of their conspiracy while subject to DOCTORS HOSPITAL, INC. and BAPTIST HEALTH SOUTH FLORIDA, INC.'s right of control, including:

a.   Improperly investigating or neglecting to properly investigate Plaintiffs formal complaints about bullying, discrimination, hostile work environment, etc.,

b.   Ignoring the repeated concerns and complaints voiced by Plaintiffs in both a formal and informal way,

c.   Informing multiple team members of the formal and informal complaints raised by Plaintiffs, including but not limited to, informing the specific team members complained about and telling them who brought forth the complaint.

d.   Unexplained and unfounded complaints raised against Plaintiffs after their concerns had been voiced to supervisors and/or management,

e.   Secretly agreeing to file numerous complaints against Plaintiffs to create a log significant enough to falsely justify termination and/or forced resignations.

177.   Defendants' conspiracy and their respective overt acts caused Plaintiffs to lose their jobs and suffer damages via mental anguish, emotional distress, loss of benefits, embarrassment, humiliation, damage to reputation, lost wages, and other tangible and intangible damages.

178.   Policies are in place and set by Defendant, but were ignored and not enforced which only made the situation worse for the Plaintiffs.

179.   This conspiracy and these overt acts all occurred while under the control of Defendants' DOCTORS HOSPITAL, INC. and BAPTIST HEALTH SOUTH FLORIDA INC. who had numerous opportunities to take action after the complaints received by Plaintiffs but chose to do nothing which allowed the conditions to become worse for Plaintiffs.

180.   Complaints were raised to management within DOCTORS HOSPITAL, INC. and therefore they should have been on notice and ultimately should have gone all the way up the

chain which would have provided BAPTIST HEALTH SOUTH FLORIDA, INC. with notice of the hostile environment that Plaintiffs were forced to experience on a regular basis.

      **WHEREFORE**, Plaintiffs, NADINE TEACHMAN, ARIADNA PEREZ, AND KESNA ALEXANDER demand relief as follows:

      (a)     Injunctive relief to keep Defendants, Doctors Hospital, Inc. and Baptist Health South Florida, Inc., from engaging in discriminatory practices again;

      (b)     Reinstatement of Plaintiffs jobs with clean disciplinary records;

      (c)     Awarding judgment against Defendants, Doctors Hospital, Inc. and Baptist Health South Florida, Inc., for the back pay and benefits to which Plaintiffs would have been entitled but for Defendants discriminatory acts;

      (d)     Alternatively, awarding judgment against Defendants Doctors Hospital, Inc. and Baptist Health South Florida, Inc., for front pay due to Plaintiffs inability to return to their employment with Defendants because of the psychological injury inflicted by Defendants' act of discrimination.

      (e)     Awarding judgment against Defendants Doctors Hospital, Inc., Baptist Health South Florida, Inc., Nayivis Pupo, Lourdes Martin, Yolanda Roque, Yanielys Rodriguez, Edward Garabedian, Nichole Distefano, and Maria Cabrera for compensatory damages;

      (f)     Awarding judgment against Doctors Hospital, Inc. and Baptist Health South Florida, Inc. for punitive damages;

      (g)     Awarding Plaintiffs their costs, including reasonable attorney's fees, pursuant to 760.11(5), Fla. Stat. (2022) and the applicable Federal Code.

      (h)     For such other and further relief as this Court deems just and proper under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demands trial by jury for all matters so triable as of right.

Dated: November 23, 2022

**HEVIA LAW FIRM**
2525 Ponce de Leon Blvd.
Suite 300
Coral Gables, FL 33134
Tel: 786-441-5120 | Fax: 786-743-5600
eService:  Susy@HeviaLawFirm.com

BY: ___**Drew M. Newman**___*/s/*_____
    **Anthony C. Hevia, Esq.**
    Fla. Bar No.: 41148
    Primary:  Anthony@HeviaLawFirm.com
    **Drew M. Newman, Esq.**
    Florida Bar No.: 1031438
    Email:  Drew@HeviaLawFirm.com