UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cv-24260-KMW

NADINE TEACHMAN, an individual,
ARIADNA PEREZ, an individual, and
KESNA ALEXANDER, an individual,

    *Plaintiffs,*

v.

DOCTORS HOSPITAL, INC., a Florida
Not for Profit Corporation,

    *Defendant.*

## **DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant, Doctors Hospital, Inc. ("Doctors Hospital"), moves to dismiss with prejudice Plaintiffs' Second Amended Complaint, as follows:

### **INTRODUCTION**

The Second Amended Complaint makes clear (if it ever was not) that Plaintiffs are simply unable to plead claims for relief. Specifically, Counts I, II, V, and VI continue to fall short of pleading discrimination and hostile work environment claims under Title VII and the Florida Civil Rights Act ("FCRA"). Moreover, the Second Amended Complaint remains a shotgun pleading, with Plaintiffs continuing to incorporate by reference a litany of allegations that are wholly irrelevant to the various claims. Given the multiple opportunities Plaintiffs have had to attempt to plead claims for relief, and their continued inability to do so, the Second Amended Complaint should be dismissed with prejudice.

## **LEGAL STANDARD**

A pleading must contain "a short and plain statement of the claim showing [] the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To promote clarity in a pleading, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that fails to meet the requirements of Rule 8(a)(2), is "often disparagingly referred to as a 'shotgun pleading.'" *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings fail to give adequate notice of the claims against a defendant and are subject to dismissal. *Id.*

A complaint that sets forth no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" also fails to satisfy the requirements of Rule 8 and must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Conclusory allegations, unwarranted deduction of facts [,] or legal conclusions masquerading as facts will not prevent dismissal." *Rogers v. Nacchio*, 241 Fed. Appx. 602, 607 (11th Cir. 2007) (quoting *Jackson v. Bellsouth Telecomms., Inc.*, 372 F. 3d 1250, 1263 (11th Cir. 2004)). That is, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307 (S.D. Fla. 2015) (quotations omitted).

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although in reviewing a motion to dismiss the Court must construe the complaint in the light most favorable to Plaintiffs and take the factual allegations therein as true, (*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)), that rule is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Plaintiffs must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* This in turn requires the Plaintiffs plead "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct

alleged." *Id*. There must be more than a "sheer possibility that a defendant has acted unlawfully" to withstand dismissal. *Id*. (internal citation omitted).

## ARGUMENT

A review of Plaintiffs' Second Amended Complaint shows that Plaintiffs remain unable to plead claims for relief.

### A. *Counts I and II Fail to State Claims of Race/National Origin Discrimination*

Counts I and II of the Second Amended Complain fail because Plaintiffs have not sufficiently pled claims of race/national origin discrimination.

To state an actionable claim of race/national origin discrimination, Teachman and Alexander must allege (1) they are members of a protected class; (2) they were qualified for their job; (3) they suffered an adverse employment action; and (4) they were treated less favorably than similarly situated individuals outside their protected class." *Decosta v. ARG Res., LLC*, No. 12-23482-CV, 2012 WL 12865835, at *2 (S.D. Fla. Dec. 7, 2012) (quoting *Maynard v. Bd. Of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Even assuming that Teachman and Alexander were qualified for their jobs, their race/national origin discrimination claims (Counts I and II of the Second Amended Complaint) do not survive dismissal because (1) most of the allegedly discriminatory events do not constitute adverse employment action; and (2) to the extent any of them constitute adverse employment action, Plaintiffs have not alleged or shown they were treated less favorably than similarly situated employees outside their protected class.

### 1. *No Adverse Employment Action*

"An adverse employment action is a crucial component in any discrimination claim under Title VII [and the FCRA] because without it, Title VII [and the FCRA] offer[] no remedy." *Hyde v. Home, Inc.*, 355 F. App'x 266, 268 (11th Cir. 2009).[1]

Most of the alleged events Teachman and Alexander claim constituted race/national origin discrimination do not rise to the level of adverse employment action within Title VII and the FCRA. More specifically, Teachman and Alexander's allegation that their co-workers made racially charged comments does not amount to discrimination because "the mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not give rise to a Title VII disparate treatment violation." *Gooden v. Internal Revenue Serv.*, No. 15-14225, at *12 (11th Cir. Feb. 17, 2017) (citing *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 (11th Cir. 1982)). *See also Copeland v. Ga. Dep't of Corr.*, CV 620-057, at *15 (S.D. Ga. Aug. 22, 2022) (lack of racial sensitivity, alone, is not actionable).

Further, the allegation that Black non-Hispanics often had to eat at their own table is, even if true, nothing more than a "general allegation of co-worker ostracism" which is also not actionable because "simple rudeness and discourtesy does not alter the terms and conditions of employment sufficient[ly] to violate Title VII." *Copeland v. Ga. Dep't of Corr.*, CV 620-057, at *15 (S.D. Ga. Aug. 22, 2022); *Scusa v. Nestle USA Co., Inc.*, 181 F.3d 958, 969-70 (8th Cir. 1999). The same is true of Plaintiffs' contention that they were excluded from birthday celebrations, especially considering that exclusion from staff meetings generally is not, in and of itself, an adverse employment action under Title VII. *Harrington v. Children's Psychiatric Ctr, Inc.*, CASE NO.: 03-60213-CIV-HUCK/TURNOFF, at *15 (S.D. Fla. Dec. 5, 2003).

---

[1] "Because the FCRA is patterned after Title VII, 'federal case law on Title VII applies to FCRA claims." *Blackmon v. Wal-Mart Stores East, L.P.*, 358 F. App'x 101, 102 (11th Cir. 2009).

Plaintiffs' allegations that they received more difficult assignments also does not support Title VII and FCRA discrimination claims because courts in the Eleventh Circuit have made clear that, absent unusual circumstances, work assignments strike at the very heart of an employer's business judgment and do not constitute adverse employment actions. *See Laster v. Ga. Dep't of Corr.*, Civil Action 5:21-cv-00464-TES, at *10 (M.D. Ga. Sep. 23, 2022) (citing *McCone v. Pitney Bowes, Inc.*, 582 Fed. Appx. 798, 800 (11th Cir. 2014 and *White v. Hall*, 389 Fed. Appx. 956 (11th Cir. 2010)).

Finally, Plaintiff Alexander's efforts to establish adverse action through a warning she received is also misplaced because Alexander has not alleged that the warning tangibly affected her employment. *See Philson v. Hospital Authority of Houston County*, Civil Action No. 5:08-CV-155 (HL), at *21 (M.D. Ga. Aug. 10, 2009); *Johnson v. Potter*, 732 F. Supp. 2d 1264, 19 (M.D. Fla. 2010) ("Because the suspensions and warning letters did not affect Johnson's pay or employment conditions, the discipline does not constitute an adverse employment action for purposes of a Title VII discrimination claim"). Indeed, Plaintiff Alexander alleges it was she (and not Defendant) who decided to end the employment relationship. (ECF No. 22, Ex. A, at ¶ 62). *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (holding that "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment") (emphasis in original), *overruled on other grounds as recognized by Crawford*, 529 F.3d at 974.

### 2. *No Comparators*

A mere allegation that there are comparators is not enough to plead the fourth element of a race/national origin discrimination claim (i.e., to plead hat there are similarly situated individuals outside of Plaintiffs' protected class who were treated more favorably). To survive dismissal, the

comparators must be similarly situated in "all relevant respects." *Dickinson v. Springhill Hosps., Inc.*, 187 F. App'x 937, 939 (11th Cir. 2006); *see also MackMuhammad v. Cagle's Inc.*, 379 Fed. Appx. 801, 804 (11th Cir. 2010) (stating same). That is, "a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1228 (11th Cir. 2019). The individuals with whom a plaintiff seeks to compare herself must have: (1) reported to the same supervisor, (2) been subject to the same standards, and (3) "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Sanguinetti v. United Parcel Serv., Inc.*, 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000), *aff'd.* 254 F.3d 75 (11th Cir. 2001)).

To the extent any of the alleged events constitute adverse employment action, Counts I and II nonetheless fail because Teachman and Alexander have not sufficiently alleged they were treated less favorably than similarly situated individuals outside their protected class. Remarkably, Plaintiffs allege that rude comments were made about non-Hispanics, generally (ECF No. 22, Ex. A, at ¶ 25). In other words, that the rude comments were not limited to individuals who shared Plaintiffs' race and national origin.[2] Plaintiffs also allege that Ariadna Perez, *a "light-skinned Hispanic"* (*id.* at ¶ 18) received shorter breaks and was reprimanded in the same manner as Teachman and Alexander (*see, e.g., id.* at ¶ 31).

Similarly, even if Teachman's termination is an adverse employment action, she does not identify a similarly situated individual who was treated more favorably. Instead, she alleges only that she was treated "different from the other *similarly titled employees.*" (*Id.* at ¶ 71) (emphasis added). That, however, is not the inquiry in an employment discrimination case.

---

[2] Plaintiffs Teachman and Alexander do *not* share the same national origin, as evidenced by the EEOC Charges attached to their Second Amended Complaint.

In short, the Court should dismiss Counts I and II of the Second Amended Complaint.

### B. *Counts V and VI Fail to State Claims of Hostile Work Environment*

To plead a hostile work environment, Plaintiffs must allege that:

(1) [they] belong[] to a protected group; (2) [they were] subjected to unwelcome harassment; (3) the harassment was based on [their] membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (internal quotation marks omitted). As to the fourth element, the Court considers the totality of the circumstances, including "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). A hostile work environment is created only "when the workplace is permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20 (1993).

While the Second Amended Complaint alleges that other employees made rude comments about Black non-Hispanics on a "regular basis" (ECF No. 22, Ex. A, at ¶26), the Eleventh Circuit has consistently held that a pattern of rude and insensitive remarks, and/or isolated instances of a more severe nature, are insufficient to establish a hostile work environment. *Howard v. Sunniland Corp.*, Case No: 2:16-cv-321-FtM-99MRM (M.D. Fla. Nov. 3, 2016) (citing *Alhallaq v. Radha Soami Trading, LLC*, 484 F. Appx. 293, 295 (11th Cir. 2012). Indeed, in *Barrow v. GA. Pac. Corp.,* 144 F. Appx. 54, 57 (11th Cir 2005), the Eleventh Circuit affirmed a trial court's finding that no hostile work environment existed where supervisors repeatedly used racial slurs to refer to

7

plaintiffs and occasionally threatened them with racially motivated physical violence. *See also Alhallaq v. Radha Soami Trading, LLC*, 484 F. Appx. 293, 296 (11th Cir. 2012) (affirming dismissal of a Muslin employee's hostile work environment claim where employee alleged that employer referred to her as "dirty" and told her "to go to Hell" and "burn in Hell"); *Singleton v. Auburn Univ. Montgomery*, 520 F. App'x 844, 847-49 (11th Cir. 2013) (concluding that racist comments such as being called "Do Boy," being asked to leave a meeting of supervisors, being told to "watch [his] back" because of his race, while deplorable, were not severe or pervasive enough to create a hostile work environment); *Joseph v. Florida Quality Truss Industries, Inc.*, CASE NO.: 05-61045-CIV-COOKE/BROWN (S.D. Fla. Dec. 6, 2006) ("the mere utterance of an ethnic or racial epithet which engenders offensive feelings does not sufficiently affect the conditions of employment to implicate Title VII").

Similarly, and as stated in Section A, above, Plaintiffs' allegations that Black non-Hispanics often had to eat at their own table and were excluded from birthday celebrations (ECF No. 22, Ex. A, at ¶ 26) are, even if true, nothing more than "general allegation[s] of co-worker ostracism" which are also not actionable. *Scusa*, 181 F.3d at 969-70. The allegation that "some" employees had breaks that were a few minutes longer is also insufficient because, even if true, "differential treatment in relatively minor office matters does not create an objectively hostile work environment." *Hutchinson v. Auburn Univ.*, No. 3:18-cv-389-ALB, at *9 (M.D. Ala. Apr. 17, 2020).

The "harder" assignments Plaintiffs allegedly received also cannot form the basis of a hostile work environment claim because "work assignments strike at the very heart of an employer's business judgment and expertise." *Laster*, No. 5:21-cv-00464-TES. And "assigning individuals to difficult jobs [is] not objectively abusive." *Bell v. Ala. Dep't of Human Res.*, Case

8

No.: 2:16-cv-01658-RDP (N.D. Ala. June 6, 2017) (quoting "*Combs-Burge v. Rumsfeld*, 170 F. App'x 856, 862 (4th Cir. 2006)). *See also Endemano v. Sec'y, Dep't of Homeland Sec.*, Case No: 6:13-cv-348-Orl-36TBS (M.D. Fla. Mar. 19, 2014) ("hiring decisions, work assignments, and instances of retaliation constitute discrete acts that cannot be considered part of a hostile work environment claim."). Finally, the warnings Plaintiffs contend they received after they allegedly complained of discrimination are, even if true, discrete acts that are "not considered part of a hostile work environment." *Freeman v. City of Riverdale*, 330 F. App'x 863, 865 (11th Cir. 2009).

In sum, any race-based hostile work environment claim (Counts V and VI) fails.

### C.     *All Counts Fail Because the Complaint is a Shotgun Pleading*

A shotgun pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014). *Johnson v. Curry*, 3:21-cv-726-MMH-PDB, at *13 (M.D. Fla. Aug. 8, 2022). The Eleventh Circuit has "roundly, repeatedly, and consistently" condemned shotgun pleadings. *Id.* at 1125. To avoid being characterized as a "shotgun pleading," a Complaint must not incorporate vague and irrelevant allegations into subsequent counts. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n. 9 (11th Cir. 1997) (a complaint that incorporates approximately 40 general allegations, many of which are vague, into subsequent counts is a shotgun pleading where many of those allegations relate to only some of the counts, or none of the counts). *See also Lennen v. Marriott Ownership Resorts, Inc.*, Case No: 6:16-cv-855-Orl-41TBS (M.D. Fla. Mar. 31, 2019) (dismissing certain counts as shotgun pleadings where Plaintiff incorporated "large swaths of factual allegations without regard to their relevance to the specific count.").

"[I]f, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene sua sponte and order a repleader." *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001); *Kanopy Holdings, Inc. v. WL Grp.*, Civil Action 1:21-cv-03304-SDG, at *10 (N.D. Ga. Sep. 20, 2022) ("The Eleventh Circuit has "time and again . . .held that a District Court retains authority to dismiss a shotgun pleading on that basis alone") (citing *Jackson v. Bank of Am.*, 898 F.3d 1348 (11th Cir. 2018)).

The Second Amended Complaint is a shotgun pleading subject to dismissal. First, "if Plaintiff[s] wish[] to assert discrimination under various theories, Plaintiff[s] must assert them as separate counts." *Hadely v. Radioshack Corp*, No. 01-5094-CIV-GRAHAM (S.D. Fla. Apr. 16, 2002). However, Counts I and II combine two theories of discrimination (race and national origin) into single counts.

Second, the Complaint incorporates by reference into each count a multitude of allegations that are irrelevant and wholly inapplicable. For example, Counts I, II, V, and VI are claims by Teachman and Alexander only, yet they incorporate by reference allegations regarding Plaintiff Perez's skin color, ethnicity, work title and history, alleged incidents involving her vehicle, and even Perez's alleged exhaustion of administrative remedies. (ECF No. 22, Ex. A, at ¶¶ 10, 13, 18, 19, and 34). As a result, Teachman and Alexander's discrimination and hostile work environment claims are plagued with immaterial allegations concerning another party. Similarly, the whistleblower retaliation claim (misnumbered as Count IX) incorporates by reference exhaustion of administrative remedies allegations (*id.* at ¶¶ 9-14) that are inapplicable to that claim.

Therefore, because shotgun pleadings such as the Second Amended Complaint "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and

impose unwarranted expense on the litigators, and the court's parajudicial personnel and resources," the Second Amended Complaint, should be dismissed. *Jackson v. Bank of Am.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing with prejudice this action and awarding such other relief as this Court deems just and proper.

DATED this 8th day of May 2023.

Respectfully submitted,

LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, Florida 33131
Tel: (305) 400-7500
Fax: (305) 675-8497

By: */s/ Rocio Blanco Garcia*
Patrick G. DeBlasio, III, Esq.
Florida Bar No.: 871737
Email: *pdeblasio@littler.com*
Rocio Blanco Garcia, Esq.
Florida Bar No. 099304
Email: *rblancogarcia@littler.com*

*COUNSEL FOR DEFENDANT*